**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI CIVIL DIVISION

WEN LU,

    *Plaintiff*,

v.                                                                                          Case No.:

CARNIVAL CORPORATION,
a Panamanian Corporation, and ULTRAMAR,
a Mexican Corporation,

    *Defendants.*

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Wen Lu, sues Defendant, Carnival Corporation, a Panamanian Corporation, and Defendant, Ultramar, a Mexican Corporation, for damages and alleges as follows:

### THE PARTIES

1.  The Plaintiff, Wen Lu is an individual and citizen of California.

2.  Defendant, Carnival Corporation ("Carnival"), is a Panamanian corporation with its principal place of business is in Florida, and is the operator of cruise ships within the waters of the State of Florida.

3.  Defendant, Ultramar, is a foreign corporation maintaining its principal place of business in Mexico and/or Miami, Florida, and upon information and belief, was licensed under the laws of foreign countries, including Mexico, and doing business as a shore excursion operator in multiple locations including Cozumel and Playa del Carmen, Mexico.

### JURISDICTION AND VENUE

4.  This is an action involving the diversity of citizenship of the parties as more fully described herein and for damages in excess of $75,000.00. Admiralty jurisdiction is also proper

under 28 U.S.C. § 1333 as the cause of action is a maritime tort.  In addition, there is a forum selection clause in Plaintiff's passenger cruise ticket with Defendant Carnival, which calls for all lawsuits to be brought in the Federal Court for the Southern District of Florida.

5. Defendant Carnival is a cruise line engaged in the business of marketing, advertising, selling, and operating a cruise line and the provision and sale of shore excursions out of various ports within the continental United States, including Ft. Lauderdale and Miami, Florida, San Juan, Puerto Rico, and other ports around the world, including Mexico. Carnival derives substantial revenues from the cruises originating and terminating in various ports of the State of Florida, including Ft. Lauderdale and Miami, and San Juan, Puerto Rico, as well as from the sale of shore excursions which it advertises, markets, and sells at a profit as part of the cruise voyages to its customers.

6. At all material times, Carnival was the owner, operator, owner *pro hac vice*, and/or otherwise in control of the vessel CARNIVAL HORIZON (the "Cruise Ship").

7. At all material times, Ultramar was the owner, operator, owner *pro hac vice*, and/or otherwise in control of the vessel upon which Ms. Lu fell (the "ferry").[1]

8. At all material times, the "Ancient City of Tulum" excursion, as well as the Ferry boat ride between Cozumel (where the CARNIVAL HORIZON was docked) and Playa Del Carmen as part of the excursion, was offered, arranged for, sponsored, recommended, marketed, sold, co-operated, and/or managed by Carnival from its headquarters in Miami, Florida, through its website, and onboard the Cruise Ship.

---

[1] Ultramar's website states that the company currently has fourteen (14) ships in its fleet to transport passengers throughout Mexico and the surrounding islands. It is not yet known which of the 14 ships was used to transport the Plaintiff and her family on the date of the incident.

9. At all material times, Ultramar was engaged in the business of marketing, advertising, selling, and operating ferry boat rides between Cozumel and Playa Del Carmen, as well as other routes between cities and islands of Mexico. Ultramar derives revenue by providing shore excursions/tours to cruise lines and their passengers from visiting cruise ships. Ultramar markets and promotes ferry boat rides/tours on the Internet, including the website https://www.ultramarferry.com/en, which provides locations where the Ferry rides/tours operate, the names of ships in the Defendant's fleet with corresponding pictures and details about each ship.

10. At all times, Ultramar engaged in systematic and continuous business activities within the State of Florida. These activities show a general course of business activity in the State of Florida for pecuniary benefit. On information and belief, at all relevant times Defendant Ultramar: (a) reached out to cruise lines in Florida (including Carnival) and established long-term partnerships, joint ventures, and other business relationships with them, to sell ferry excursions to passengers originating from Florida; (b) sold shore excursions to passengers originating from Florida; (c) received the benefits of advertising efforts of Florida-based cruise lines (targeted at passengers originating from Florida); (d) received payments, processed in Florida, from Carnival and other Florida-based cruise lines; (e) sold excursions through the excursion desk of Florida-based cruise line(s); and (f) generated a large portion of income from doing business with Florida-based cruise lines.

11. At all material times, Defendant Ultramar through the above activities either directly or through agents or representatives, were operating, conducting, engaging in, and carrying on substantial and non-isolated business in the State of Florida and/or United States as a whole through an ongoing business relationship with Carnival and other cruise lines headquartered

in Miami for marketing and selling recreational shore excursions/tours, including the ferry boat ride from Cozumel to Playa Del Carmen thereby subjecting themselves to jurisdiction in this state under the Long Arm Statutes of Florida, including Florida Statute §§ 48.081, 48.181, and 48.193, and pursuant to Federal Rule of Civil Procedure 4(k)(2). Defendant Ultramar entered into contracts with Carnival and other cruise lines within Florida and the United States.

## FACTS COMMON TO ALL COUNTS

Plaintiff hereby repeats and realleges paragraphs 1 – 11 as fully incorporated herein. Plaintiff further alleges:

12. Plaintiff, Wen Lu, was a fare-paying passenger aboard the CARNIVAL HORIZON on February 6, 2020.

13. During the cruise vacation, the vessel stopped in the port of Cozumel, Mexico. While the vessel was in port, the Plaintiff was scheduled to take the excursion "Ancient City of Tulum." The excursion was purchased through Carnival's website prior to the cruise vacation.

14. As part of the Ancient City of Tulum excursion, Carnival's website states: "You'll start your journey by taking a ferry boat to Playa Del Carmen."

15. On the Ancient City of Tulum advertisement on Carnival's website, the site states: it offers a "Best Price Guarantee" for excursions, encouraging passengers to book through its site. It also says it offers "The Best Shore Excursions: We've hand selected the best local providers at every port of call." The site also promises passengers it will not leave until they're back on the boat when in port if they book an excursion through Defendant Carnival.

16. Defendant Carnival also assisted passengers in finding the ferry. The defendant printed itineraries which included the excursion and told Plaintiff where to meet on the ship for

4

the excursion. The defendant slipped the printed itinerary under the Plaintiff's cabin door the night before the excursion.

17.     On the day of the excursion, the Defendant Carnival gathered all passengers taking the Ancient City excursion in one area on the ship, and then led the group to the Ultramar ferry.

18.     On the date Plaintiff Lu took the Ultramar Ferry as part of the Ancient City of Tulum excursion, the water was extremely rough.  When on the cruise ship on February 6, 2020 prior to Ms. Lu's fall, the water was visibly rough.  The water became increasingly rough as the ferry left Cozumel and got closer to Playa Del Carmen.

19.     Ms. Lu took the Ultramar ferry to Playa Del Carmen to visit Tulum by a bus tour as part of the excursion.

20.     As Ms. Lu was walking down the ferry steps to get to a lower level of the Ferry on her way back to the cruise ship from Playa Del Carmen, she slipped on a step, fell, and became injured due to the extreme rocking and movement of the ferry while it was tied to the dock at Playa Del Carmen.

21.     The subject staircase was so wide that passengers could not hold both hand rails while walking down the stairs.

22.     As a result of slipping, falling, and becoming injured due to the extreme rocking and movement of the ferry, Plaintiff Lu sustained injuries to her head, right wrist, left ankle, and other parts of her body, all of which have required medical treatment and will continue to require medical treatment in the future.

**COUNT I – CARNIVAL CORPORATION'S NEGLIGENT FAILURE TO WARN**

Plaintiff hereby repeats and realleges paragraphs 1 – 22 as fully incorporated herein.  The Plaintiff further alleges:

23. Defendant CARNIVAL had the duty to exercise reasonable care under the circumstances with regard to passengers on its ships. This duty included the duty to warn Plaintiff of hazardous or dangerous conditions that it either knew of, or should have known of, in areas where passengers were either invited or reasonably expected to visit during the cruise.

24. The Defendant knew passengers on the subject cruise would board the Ultramar ferry in the area where the Plaintiff was injured because it sold tickets for the ferry to its passengers through its website prior to the cruise vacation.

25. The Defendant did have actual and constructive notice of the dangerous condition because it used weather monitoring systems on board the vessel which would alert it to inclement weather, and also the rough water was readily observable from the vessel. The Defendant also knew or should have known of the history of rough water causing the ferry to rock violently in the past based on its business dealings with Ultramar in the past and also based on an easy search on the internet which displays several videos of Ultramar ships rocking violently in rough waves at times before the Plaintiff's fall.

26. The Defendant knew that boarding a ferry or tender boat such as the Ultramar ferry in rough water/weather can be dangerous because of past incidences when passengers have been knocked down or have fallen on ferries and tender boats due to rocking of the boat(s) from rough waves and weather.

27. Upon seeing the rough waves present on the morning of the incident and monitoring the weather in Cozumel *and* Playa Del Carmen/Tulum before the excursion, the Defendant had a duty to warn the Plaintiff that it would be dangerous to board the Ultramar ferry in rough weather. If the defendant had made such a warning, the Plaintiff would have stayed on the boat or attempted to take additional precautions to avoid injury when descending the stairs on the Ultramar ferry.

28. The defendant breached its duty to the Plaintiff by failing to have is employees or agents warn passengers of the dangerous condition.

29. The Plaintiff's injuries were proximately caused by the Defendant's failure to warn the Plaintiff of the dangerous condition, because with such a warning the Plaintiff would have acted differently and would have avoided being knocked down and becoming injured by the rough waves.

30. As a direct and proximate result of Defendant Carnival's negligent failure to warn, the Plaintiff sustained severe injuries to her right wrist, left ankle, head, and other parts of her body resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life and expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future. The Plaintiff also lost the value of the cruise and incurred other incidental expenses.

WHEREFORE, Plaintiff Wen Lu prays for a judgment to be entered against the Defendant, Carnival Corporation, for compensatory damages in excess of Seventy Five Thousand Dollars ($75,000.00) including prejudgment and post judgment interest and costs.  Plaintiff demands a trial by jury.

**COUNT II – CARNIVAL CORPORATION'S NEGLIGENT FAILURE
TO ACT WITH REASONABLE CARE UNDER THE CIRCUMSTANCES**

Plaintiff hereby repeats and realleges paragraphs 1 – 22 as fully incorporated herein.  The Plaintiff further alleges:

31. Defendant Carnival had the duty to exercise reasonable care under the circumstances with regard to passengers on its ships.  This includes acting with reasonable care with regard to places off the ship that it knows or reasonably expects its passengers to visit.

7

32. The Defendant knew that its passengers would be boarding the Ultramar ferry because it sold tickets for the ferry through its website.

33. The Defendant knew or should have known that allowing its passengers to board and ride the Ultramar ferry in inclement weather would be dangerous. The defendant knew of this dangerous condition because of past incidences when passengers have been injured boarding this ferry or other ferries or tender boats during bad weather and falling due to the weather conditions.

34. The defendant also retained the authority to cancel the excursion if the weather was inclement as posted on its website prior to the cruise. Carnival should have been watching the weather and should have cancelled the excursion because of the rough weather and waves.

35. In the alternative, Carnival should have gone onto the Ultramar ferry to ensure there was enough crew aboard to assist its passengers in boarding safely onto the ferry. If it found there was not enough crew, it should have either cancelled the excursion or sent some of its own crew on board the ferry to assist passengers in safe boarding.

36. The weather conditions were not open and obvious because the Plaintiff is a lay person and did not have experience in watching weather and waves to make an assessment of whether it was safe to operate a high speed ferry excursion. The plaintiff was also relying on the expertise of the professionals in the area and on the cruise. Even if it were open and obvious, the Defendant's duty to act with reasonable care (cancel the excursion or assist passengers in boarding) was not obviated.

37. The Plaintiff's injuries were proximately caused by the Defendant's negligence, because if the excursion had been cancelled the Plaintiff would not have fallen while boarding the ferry and become injured. In the alternative, if the Defendant had send crew onto the ferry to help with boarding, the Plaintiff also would not have fallen due to the rough waves and weather.

38. As a direct and proximate result of Defendant Carnival's negligent failure to act with reasonable care under the circumstances, the Plaintiff sustained severe injuries to her right wrist, left ankle, head, and other parts of her body resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life and expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future. The Plaintiff also lost the value of the cruise and incurred other incidental expenses.

WHEREFORE, Plaintiff Wen Lu prays for a judgment to be entered against the Defendant, Carnival Corporation, for compensatory damages in excess of Seventy Five Thousand Dollars ($75,000.00) including prejudgment and post judgment interest and costs. Plaintiff demands a trial by jury.

### COUNT III – CARNIVAL CORPORATION'S NEGLIGENT RETENTION/HIRING

Plaintiff hereby repeats and realleges paragraphs 1 – 22 as fully incorporated herein. The Plaintiff further alleges:

39. Defendant Carnival had the duty to exercise reasonable care when operating its cruise. This included the duty to use reasonable care in the hiring and retention of the excursion companies that it marketed, advertised, and sold to its passengers.

40. Carnival advertised on its website that it hand selects "The Best Shore Excursions" at every port of call.

41. The Defendant breached its duty to the Plaintiff because it either hired or retained Defendant Ultramar with actual or constructive knowledge of complaints that the ferry knowingly boarded passengers and operated its ships in inclement weather, causing past injuries.

42. The Defendant knew or should have known of the excursion's history based on past dealings and an easy search on the internet shows many negative reviews mentioning operating in bad weather and "crazy" captain(s) on the Ultramar ferry. There are also multiple videos of Ultramar ferries in extremely rough weather and even boarding in rough, dangerous weather. The reviews and video are all from before the Plaintiff was injured.

43. The defendant breached its duty to the Plaintiff by either failing to consider the above and other information when determining whether Ultramar was fit to take its passengers on an excursion either at the outset or on review of the excursions it conducts business with.

44. The Plaintiff's injury was proximately caused by the defendant's negligent selection or retention of Defendant Ultramar, because if Carnival had either not hired or stopped doing business with Ultramar, Ms. Lu would not have purchased the excursion through Carnival's website and in turn would not have fallen and become injured while on the excursion.

45. As a direct and proximate result of Defendant Carnival's negligent hiring and retention of Ultramar, the Plaintiff sustained severe injuries to her right wrist, left ankle, head, and other parts of her body resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life and expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future. The Plaintiff also lost the value of the cruise and incurred other incidental expenses.

WHEREFORE, Plaintiff Wen Lu prays for a judgment to be entered against the Defendant, Carnival Corporation, for compensatory damages in excess of Seventy Five Thousand Dollars ($75,000.00) including prejudgment and post judgment interest and costs. Plaintiff demands a trial by jury.

## COUNT IV – VICARIOUS LIABILITY OF CARNIVAL
## CORPORATION BY ACTUAL OR APPARENT AGENCY

Plaintiff hereby repeats and realleges paragraphs 1 – 22 as fully incorporated herein.  The Plaintiff further alleges:

46. Defendant Carnival had the duty to use reasonable care under the circumstances when operating its cruise. This duty extends to any person(s) or entities who are acting as an actual or apparent agent of Carnival.

47. At the time of the subject incident, Defendant Ultramar ferry was acting as an actual and/or apparent agent of the defendant.

48. Prior to the subject cruise, the defendant made manifestations which caused Plaintiff to believe that Ultramar Ferry and its employees had the authority to act on behalf of Carnival by:

   a. Selling tickets to go onto the ferry through its website at the same time that Plaintiff's cruise vacation was booked;

   b. Advertising on its website that the excursions were the best and were hand selected by Carnival;

   c. Advertising on its website on the page of the Ancient City of Tulum excursion that "[w]e take care of the details and wait for all of the **Carnival excursions** to return before departing," leading passengers to believe they were working together or that this was Carnival's excursion;

   d. Providing the Plaintiff with a printed itinerary in her cabin of where to meet for the excursion on the ship, and then leading the group of passengers to the excursion; and

   e. Advertising that the excursions are "hand selected," leading passengers to believe Carnival is working together with the excursions.

49. Plaintiff's belief that the ferry was acting as an agent of the Defendant was reasonable because Plaintiff had to book the ferry through Carnival's site, the cruise line's crew members guided the passengers to the ferry, the cruise line advertised that the excursion was "hand

11

selected" and that Carnival would take care of all the details, even referring to the excursion as "Carnival excursions" on the website.  Also, Carnival retained the ability to cancel the excursion for inclement weather.

50. The plaintiff acted as a result of this belief by purchasing the tickets in the first place and believing it was a trustworthy operation run by or with Carnival because it was advertised through Defendant Carnival's website.

51. The Plaintiff further acted on behalf of this belief by boarding the ferry despite the potentially rough weather because there was no warning nor cancellation by the cruise line. The Plaintiff trusted the expertise of the Defendant Carnival in watching the weather and determining when it is and is not safe to let passengers out onto ferries and other excursions off the ship. Defendant Carnival retained the ability to cancel the ferry if it deemed the weather was too bad to proceed. When the ferry was not cancelled the plaintiff assumed this was an acknowledgment by Defendant Carnival that it was safe.

52. As a result of the above, the rough waves tossing the ferry around caused the Plaintiff to fall while descending a stairwell on the ferry, fall, and become injured.

53. Carnival also had the Ultramar ferry acting on its behalf as an actual agent at the time of the Plaintiff's injury.

54. Carnival acknowledged that Ultramar would be acting (transporting passengers in and around Mexico) on its behalf.  Carnival acknowledged this by selling tickets for the ferry through its website.

55. Ultramar accepted the undertaking by accepting the passengers who had purchased the tickets through Carnival's website onto its ferry for transport and by accepting payment for

each passenger being transported from Carnival or another entity that works through/for excursions booked on Carnival's website.

56. Carnival had control and exercised control over the Ultramar ferry excursion because it had the ability to cancel the passenger's ferry excursion if it deemed that the weather was inclement and it was unsafe to run the excursion.

57. The agent (Ultramar) accepted the undertaking by running the excursion for Carnival with Carnival passengers on board, and also by accepting money from Carnival for running the excursion. Also Ultramar accepted Carnival's instructions on location and timing of running the ferry.

58. Carnival had control over Ultramar's actions because it could cancel the excursion if it found the weather to be too rough. Additionally, Carnival was in touch with the excursions crew and could direct them on what to do with passengers if there was a problem such as an injury or bad weather. Carnival exercised further control over the operation by telling the operator (Ultramar) where to take passengers, setting prices, and collecting money for Ultramar from its passengers.

59. For the reasons above, Ultramar was acting as an actual agent of Defendant Carnival on the date of the injury and is vicariously liable for Ms. Lu's injuries.

60. As an actual or apparent agent of the Defendant, Ultramar had a duty to the Plaintiff to warn Ms. Lu of dangerous conditions and to act with reasonable care under the circumstances with regard to passengers boarding and disembarking the ferry.

61. Defendant Carnival was negligent through the actions and inactions of its agent, Ultramar, due to the following:

    a.    Failure to warn Plaintiff of the dangerous condition of bad weather and unexpected rocking while boarding the ferry and walking around inside the ferry;

    b.    Failure to have sufficient hand holds on board the ferry;

    c.    Failure to have crew in place to assist passengers during rough weather while boarding and walking down stairs on the ferry;

    d.    Failing to cancel the trip when bad weather was expected; and

    e.    Failing to act with reasonable care under the circumstances.

62. The failure of Ultramar employees/crew to act with reasonable care under the circumstances in warning Plaintiff about the danger of being thrown by the rough waves on the boat and also failing to assist her properly and safely to board the boat proximately caused her to fall and become injured. If she had received a proper warning she would have either not gone or taken additional actions to ensure her safety. If she had assistance boarding in the rough weather she would not have fallen.

63. As a direct and proximate result of Defendant Carnival's vicarious liability for its agent or apparent agent Ultramar's negligence, the Plaintiff sustained severe injuries to her right wrist, left ankle, head, and other parts of her body resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life and expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future. The Plaintiff also lost the value of the cruise and incurred other incidental expenses.

WHEREFORE, Plaintiff Wen Lu prays for a judgment to be entered against the Defendant, Carnival Corporation, for compensatory damages in excess of Seventy Five Thousand Dollars

($75,000.00) including prejudgment and post judgment interest and costs.  Plaintiff demands a trial by jury.

### COUNT V – ULTRAMAR'S NEGLIGENT FAILURE TO WARN

Plaintiff hereby repeats and realleges paragraphs 1 – 22 as fully incorporated herein.  The Plaintiff further alleges:

64. Defendant Ultramar had the duty to exercise reasonable care under the circumstances with regard to passengers on its ships.  This duty included the duty to warn Plaintiff of hazardous or dangerous conditions that it either knew of, or should have known of, in areas where passengers were either invited or reasonably expected to visit during the cruise.

65. Defendant Ultramar sold tickets for its ferry to Carnival passengers through Carnival's website prior to the cruise vacation.

66. Defendant Ultramar did have actual notice of the dangerous condition because the rough weather was observable from the ferry, and as an operator of a ferry and working as a business in the marine industry the Defendant Ultramar had experience in watching the weather and assessing whether the seas are too rough to operate the ferry safely.

67. Defendant Ultramar knew that boarding a ferry or tender boat such as the Ultramar ferry in rough water/weather can be dangerous because of past incidences when ferry passengers have been knocked down or have fallen on the Ultramar ferry due to rocking of the boat from the waves.

68. Upon seeing the rough waves present on the morning of the incident, Defendant Ultramar had a duty to warn the Plaintiff that it is dangerous to board ferry in rough weather. If the defendant had made such a warning, the Plaintiff would have stayed on the cruise ship or attempted to take additional precautions to avoid injury when boarding the Ultramar ferry.

69. Defendant Ultramar breached its duty to the Plaintiff by failing to have is crew members warn passengers of the dangerous condition or have a warning posted at boarding, online, or in some other conspicuous location where Plaintiff would have seen it.

70. The Plaintiff's injuries were proximately caused by Defendant Ultramar's failure to warn the Plaintiff of the dangerous condition, because with such a warning the Plaintiff would have acted differently and would have avoided being knocked down and becoming injured by the rough waves.

71. As a direct and proximate result of Defendant Ultramar's negligent failure to warn, the Plaintiff sustained severe injuries to her right wrist, left ankle, head, and other parts of her body resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life and expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future. The Plaintiff also lost the value of the cruise and incurred other incidental expenses.

WHEREFORE, Plaintiff Wen Lu prays for a judgment to be entered against the Defendant, Ultramar, for compensatory damages in excess of Seventy Five Thousand Dollars ($75,000.00) including prejudgment and post judgment interest and costs.  Plaintiff demands a trial by jury.

### COUNT VI – ULTRAMAR'S NEGLIGENT FAILURE TO ACT WITH REASONABLE CARE UNDER THE CIRCUMSTANCES

Plaintiff hereby repeats and realleges paragraphs 1 – 22 as fully incorporated herein.  The Plaintiff further alleges:

72. Defendant Ultramar had the duty to exercise reasonable care under the circumstances with regard to passengers on its ferry.

73. Defendant Ultramar knew or should have known that allowing passengers to board and ride the Ultramar Ferry in inclement weather would be dangerous. The defendant knew of this dangerous condition because of past incidences when people have been injured boarding the ferry during bad weather and falling due to the weather conditions.

74. Defendant Ultramar was able to cancel the excursion if the weather was inclement. Ultramar should have been watching the weather and should have cancelled the excursion because of the rough weather and waves.

75. In the alternative, Defendant Ultramar should have brought in extra crew or asked Carnival to send crew on the ferry to ensure there was enough crew aboard to assist passengers in boarding safely onto the ferry. If there was not enough crew, it should have cancelled the trip.

76. The weather conditions were not open and obvious because the Plaintiff is a lay person and did not have experience in watching weather and waves to make an assessment of whether it was safe to operate a high speed ferry excursion. Even if it were open and obvious, Defendant Ultramar's duty to act with reasonable care (cancel the excursion or assist passengers in boarding) was not obviated.

77. The Plaintiff's injuries were proximately caused by Defendant Ultramar's negligence, because if the excursion had been cancelled the Plaintiff would not have fallen while boarding the ferry and become injured. In the alternative, if the Defendant assisted the plaintiff with boarding, she would not have fallen due to the rough waves and weather.

78. As a direct and proximate result of Defendant Ultramar's negligence, the Plaintiff sustained severe injuries to her right wrist, left ankle, head, and other parts of her body resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life and expense of hospitalization, medical and nursing care and treatment, loss of earnings and

loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future. The Plaintiff also lost the value of the cruise and incurred other incidental expenses.

WHEREFORE, Plaintiff Wen Lu prays for a judgment to be entered against the Defendant, Ultramar, for compensatory damages in excess of Seventy Five Thousand Dollars ($75,000.00) including prejudgment and post judgment interest and costs. Plaintiff demands a trial by jury.

Dated this 4th day of February 2021.

/s/ Catherine Saylor
JACOB J. MUNCH
E-mail: jake@munchandmunch.com
Florida Bar Number 376523
CATHERINE M. SAYLOR
E-mail: casey@munchandmunch.com
Florida Bar Number 115593
MUNCH and MUNCH, P.A.
600 South Magnolia Avenue – Suite 325
Tampa, Florida 33606
Ph: (813) 254-1557 / Fax: (813) 254-5172
*Attorneys for Plaintiff, Lu*